No. 25-1397(L)

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

JEFFERSON GRIFFIN,
*Plaintiff – Appellee*,

v.

ALLISON RIGGS,
*Intervenor – Appellant*,

and

NORTH CAROLINA STATE BOARD OF ELECTIONS,
*Defendant*,

and

NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS;
VOTEVETS ACTION FUND; TANYA WEBSTER-DURHAM; SARAH
SMITH; JUANITA ANDERSON,
*Intervenors*.

_____

On Appeal from the United States District Court for the
Eastern District of North Carolina, No. 5:24-cv-00731-M-RJ

**MOTION FOR STAY AND INJUNCTION PENDING APPEAL**

*Relief Requested by Wednesday, April 23, 2025**

---

* The North Carolina State Board of Elections reported on April 15 that it is working with a vendor and will be ready to begin implementing the state-law remedy at issue here "within a week of entering into a contract." *See infra* p. 9. Justice Riggs understands that this remedy will thus go into effect on or after April 23.

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

BACKGROUND ...................................................................................3

   A. Judge Griffin Protests Justice Riggs' Election Win ....................... 3

   B. This Court Directs the District Court to Retain Jurisdiction Over the Federal Issues................................................................................. 5

   C. The North Carolina Courts Resolve Only the State-Law Issues.................. 5

   D. The District Court Orders the State Board to Proceed with the State-Law Remedy ............................................................................ 8

JURISDICTIONAL STATEMENT ....................................................10

STANDARD OF REVIEW ................................................................10

ARGUMENT ......................................................................................10

   I. Justice Riggs is Likely to Prevail on the Merits ...........................11

      A. Retroactive Changes in Election Law Violate the Federal Due Process Clause ............................................................... 11

      B. Arbitrary and Disparate Burdens on Voting Rights Violate the Federal Equal Protection Clause ........................................ 13

      C. Implementing the State-Law Remedy Before the Federal-Law Issues Are Resolved Would Frustrate this Court's Mandate ............. 17

   II. The Other Three Factors Support a Stay and Injunction Pending Appeal ....18

CONCLUSION ...................................................................................21

CERTIFICATE OF COMPLIANCE...................................................22

Intervenor-Appellant Allison Riggs moves under Federal Rule of Appellate Procedure 8(a)(2) for a stay and injunction pending appeal. Justice Riggs presented this same request to the district court, which denied it on April 15, 2025.

Plaintiff-Appellee Jefferson Griffin opposes this motion and intends to file a response. Defendant North Carolina State Board of Elections consents to the requested relief and also intends to file a response.

## INTRODUCTION

Two months ago, this Court exercised its discretion to abstain from deciding the federal issues in this case while the North Carolina courts resolved unsettled questions of state law. The North Carolina courts used the opportunity to issue the "most impactful election-related court decision our state has seen in decades." *Griffin v. N.C. State Bd. of Elections*, No. 320P24-3, 2025 WL 1090903, at *17 (N.C. Apr. 11, 2025) (Dietz, J., concurring in part and dissenting in part). That decision permits a losing candidate to bring a post-election lawsuit intended to overturn the results by retroactively disenfranchising voters. Rather than obviate the need for federal court review, the North Carolina courts endorsed a state-law remedy that "cries out" for "a decisive rejection of this sort of *post hoc* judicial tampering in election results." *Id*.

At Judge Griffin's request, the Supreme Court of North Carolina held that active-duty military personnel and other North Carolinians living abroad had to

1

provide photo identification in November 2024 when casting their ballots for Associate Justice.  This ruling applies to votes cast in only one of North Carolina's one hundred counties, and it applies even though North Carolina law was clear at the time that these voters were "not required to submit a photocopy of acceptable photo identification."  8 N.C. Admin. Code 17.0109(d).  The Supreme Court also struck down a North Carolina statute that permitted North Carolinians living abroad who inherited their residence from their parents to vote for Associate Justice.

The Supreme Court applied both changes retroactively, ordered the State Board to throw out the targeted military and overseas ballots unless those voters provide—five months after the election—a copy of their photo identification within 30 days, and ordered the State Board to discard the ballots cast by inherited-residence voters without any cure period.  The Supreme Court permitted this remedy without any consideration of federal law because this Court—and Justice Riggs— reserved those federal-law issues for federal court.

Consistent with that reservation, Justice Riggs moved the district court on April 11 to issue an injunction against any implementation of the state-law remedy until it had considered the federal issues.  Rather than maintain the status quo, the district court "ORDERED [the State Board] to proceed" with the state-law remedy and instructed the State Board "NOT [to] certify the results of the election" that Justice Riggs won.

Justice Riggs now moves this Court for an order staying the district court's decision and for an injunction pending appeal that prohibits the parties from taking any action to enforce or effectuate the state-law remedy. This stay and injunction are necessary to ensure that this Court has time to "address the federal constitutional and other federal issues the Board raised in removing the case." *Griffin v. N.C. State Bd. of Elections*, No. 25-1020, slip op. at 11 (4th Cir. Feb. 4, 2025) (per curiam) (Exhibit A). To allow the state-law remedy to go into effect while those federal-law issues remain unresolved would be inconsistent with the U.S. Constitution and this Court's mandate.

## BACKGROUND

### A. Judge Griffin Protests Justice Riggs' Election Win

The final canvassed results of the November 2024 general election showed that Justice Riggs received 734 more votes than did Judge Griffin in the race for Associate Justice. *See* E.D.N.C. ECF No. 1-4 at 11. Judge Griffin then filed a series of election protests, including challenges to 1,409 ballots cast in Guilford County "by military or overseas citizens under Article 21A of Chapter 163, when those ballots were not accompanied by a photocopy of a photo ID or ID Exception Form"; and (2) 266 ballots "cast by overseas citizens who have not resided in North Carolina but whose parents or legal guardians were eligible North Carolina voters before leaving the United States." *Id.* at 12.

For the challenge to military and overseas ballots, Judge Griffin sought information from six counties, brought a timely protest only to ballots cast in Guilford County, and later sought to add challenges to ballots cast in Durham, Forsyth, and Buncombe Counties. *See* Judge Griffin's Br. at 66 n.15, *Griffin v. N.C. State Bd. of Elections*, No. 320P24, 2025 WL 284665 (N.C. filed Jan. 14, 2025).

On December 13, 2024, the State Board served its Decision and Order dismissing Judge Griffin's protests. Judge Griffin then made a series of filings in North Carolina court seeking to reverse that Decision and Order. Those filings included three petitions for judicial review, which the Board removed to federal court under 28 U.S.C. §§ 1331, 1441(a), 1443(2) and 1367(a). *See* E.D.N.C. ECF No. 1 (Notice of Removal). The Board explained in its removal notice that Judge Griffin's protests are inconsistent with a host of federal statutes and the Fourteenth Amendment to the U.S. Constitution. *See generally id.*

On January 6, 2025, the district court "sua sponte remand[ed] this matter to the Superior Court for Wake County." E.D.N.C. ECF No. 24. The State Board appealed, *see* E.D.N.C. ECF No. 26, and this Court granted Justice Riggs' motion to intervene, *see* Order, *Griffin v. N.C. State Bd. of Elections*, No. 25-1020 (4th Cir. Jan. 28, 2025) (ECF No. 19).

**B. This Court Directs the District Court to Retain Jurisdiction Over the Federal Issues**

On February 4, 2025, this Court entered a per curiam, unpublished opinion affirming in part and modifying in part the district court's remand order. This Court directed the district court "to modify its order to expressly retain jurisdiction of the federal issues identified in the Board's notice of removal should those issues remain after the resolution of the state court proceedings, including any appeals." *Griffin*, No. 25-1020, slip op. at 11.

**C. The North Carolina Courts Resolve Only the State-Law Issues**

Two days after this Court issued its opinion, Justice Riggs filed in Wake County Superior Court a Notice of Fourth Circuit Opinion and *England* Reservation. Justice Riggs made this reservation to "preserve her right to return to federal court for the resolution of federal issues" and explained that she "intends, should the state courts hold against her on questions of state law, to return to the Eastern District of North Carolina for disposition of her federal contentions." Justice Riggs' *England* Reservation ¶¶ 7, 8 (Exhibit B).

On February 7, 2025, the Superior Court affirmed the State Board's Order and Decision dismissing Judge Griffin's protests. *See Griffin v. N.C. State Bd. of Elections*, No. COA25-181, 2025 WL 1021724, at *3 (N.C. Ct. App. Apr. 4, 2025).

On April 4, 2025, a divided panel of the North Carolina Court of Appeals reversed. The majority held in relevant part that the two categories of ballots still at

issue—the targeted ballots cast by military and overseas citizens and the ballots cast by overseas citizens who have not lived in North Carolina—were not legally cast. *See id.* at *15. The Court of Appeals ordered the State Board to allow the military and overseas voters fifteen business days to "cure their failure to abide by the photo ID requirement." *Id*.

Judge Hampson dissented, arguing (among other things) that "equitable principles demand we do not change the rules of an election midstream or after votes are tallied to disenfranchise qualified North Carolina voters" and "fundamental principles of equal protection demand these absentee and early votes be counted in this election." *Id*. at *16 (Hampson, J., dissenting). Judge Hampson also emphasized the practical effect of the court's decision on North Carolina voters:

> What of voters who have died since election day? Their votes should count. What of servicemembers abroad sacrificing their lives and safety in remote locations unable to jump through the judicial hoops the majority now puts in their way? Their votes should count. What of overseas voters who only learned of this process second-hand due to lack of any service? Their votes should count. What of voters in every county of this State who may have moved, have not learned of this proceeding, or are sick, immobile, elderly, transient, away on extended business travel, traveling on school breaks with their children, or are simply overwhelmed by the unrelenting attack on their voting rights? Their votes should count. They did everything they were required to do. Their votes were accepted as valid votes on election day and through the canvassing process. Make no mistake: should the majority's decision be implemented, the impact will be to disenfranchise North Carolina voters even though they were eligible to vote on election day.

*Id*. at *42 (Hampson, J., dissenting).

The Court of Appeals entered its opinion on Friday, April 4.  On Sunday, April 6, Justice Riggs and the State Board petitioned the North Carolina Supreme Court for discretionary review.

On Friday, April 11, the Supreme Court issued a six-page special order granting the petitions "for the limited purpose of expanding the period to cure deficiencies arising from lack of photo identification or its equivalent from fifteen business days to thirty calendar days after the mailing of notice" and denying the petitions in all other respects relevant to this motion.  *Griffin*, 2025 WL 1090903, at *3.

Justices Earls and Dietz each issued separate opinions concurring in part and dissenting in part.  Justice Earls' separate opinion is thirty-nine pages long.  Justice Earls emphasizes that the Supreme Court's decision unfairly targets military and overseas voters who "registered in Guilford County"—"or maybe one of three or four other counties that vote heavily Democratic, the [majority's] special order is not clear."  *Id*. at *3 (Earls, J., concurring in part in the result only, dissenting in part).  Justice Earls confines her analysis to "state law issues" and does not address "the obvious conflicts with federal law including the principles relied upon in *Bush v. Gore*, 531 U.S. 98 (2000)" because the parties "expressly asserted *England* reservations of rights so that their federal law defenses may be adjudicated by federal court" *Id*. at *4 n.2.

7

For his part, Justice Dietz writes that he was "wrong" to expect that "our state courts surely would embrace the universally accepted principle that courts cannot change election outcomes by retroactively rewriting the law." *Id*. at *17 (Dietz, J., concurring in part and dissenting in part). "The Court of Appeals has since issued an opinion that gets key state law issues wrong, may implicate a host of federal law issues, and invites all the mischief [Justice Dietz] imagined in the early days of this case." *Id*. Regardless of whether "the federal courts ultimately reverse the Court of Appeals decision because of a conflict with UOCAVA, or *Bush v. Gore*, or whatever else," Justice Dietz writes, "the door is open for losing candidates to try this sort of post-election meddling in state court in the future." *Id*. at *18.

### D. The District Court Orders the State Board to Proceed with the State-Law Remedy

On Friday, April 11—the same day that the North Carolina Supreme Court issued its special order—Justice Riggs moved in the district court for a preliminary injunction under Federal Rule of Civil Procedure 65 and an injunction under the All Writs Act that prohibit the parties from taking any action to enforce or effectuate the state-law remedy while the district court considered the remaining federal issues. *See* ECF No. 37. The next day, Saturday, April 12, the district court entered a text order denying the substance of Justice Riggs' motion:

> This matter comes before the court on Intervenor-Defendant Allison Riggs' emergency motion for injunction and motion for status conference [DE 37]. Pursuant to the court's authority under the All

Writs Act, the motion is GRANTED IN PART. Defendant North Carolina State Board of Elections is ORDERED to proceed in accordance with the North Carolina Court of Appeals opinion, Griffin v. N.C. State Bd. of Elections, No. COA25-181, 2025 WL 1021724 (N.C. Ct. App. Apr. 4, 2025), as modified by the North Carolina Supreme Court in its April 11 Order, but SHALL NOT certify the results of the election, pending further order of this court. Further, the court adopts the following briefing schedule to facilitate prompt resolution of this matter: each party may file an opening brief addressing the remaining federal issues no later than April 21, 2025. Response briefs shall be due no later than April 25, 2025. Replies shall be due April 28, 2025. Unless the court finds that oral argument will aid the decisional process, it intends to rule on the papers as soon as practicable. Entered by Chief Judge Richard E. Myers II on 4/12/2025.

On Monday, April 14, Justice Riggs filed a notice of appeal, *see* E.D.N.C. ECF No. 44, and moved in the district court for a stay and injunction pending appeal, E.D.N.C. ECF No. 47. The district court denied that motion on April 15. *See* E.D.N.C. ECF No. 60.[1]

Also on April 15, the State Board reported that it "has begun work with the vendor that maintains its online portal for processing military and overseas ballots to create a means by which voters may securely submit copies of photo IDs and exception forms online." E.D.N.C. ECF No. 61 at 6 (Exhibit D). "The State Board anticipates the portal to be ready within a week of entering into a contract." *Id.*

---

[1] This post-appeal order denying Justice Riggs' motion for a stay and injunction pending appeal "is not before" the Court. *Grimmett v. Freeman*, 59 F.4th 689, 691 n.2 (4th Cir. 2023). If the Court is inclined to consider it, Justice Riggs attaches it here as Exhibit C.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this interlocutory appeal because it is an appeal of an order granting and denying injunctive relief. 28 U.S.C. § 1292(a)(1). The district court ordered the State Board to implement the state-law remedy, and it refused in the same text order to enter the injunctions that Justice Riggs requested.

## STANDARD OF REVIEW

This Court may "stay" an "order of a district court pending appeal" and "modify[]" or "grant[] an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1)(A), (C). Four factors guide the Court's decision whether to grant this relief: (1) whether the party "has made a strong showing" toward success "on the merits"; (2) whether the party "will be irreparably injured absent a stay" or injunction; (3) whether a stay or injunction "will substantially injure the other parties"; and (4) "where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 786 (1987)). These "four factors should be balanced; thus, for example, if the balance of harms tips heavily enough in the stay applicant's favor then the showing of likelihood of success need not be as strong, and vice versa." 16A Catherine T. Struve, *Federal Practice & Procedure* § 3954 (5th ed. 2025) (footnotes omitted).

## ARGUMENT

The Court should maintain the status quo while Justice Riggs pursues her appeal to this Court. Justice Riggs is likely to prevail on the merits of her argument

that the relief outlined by the North Carolina courts and ordered by the district court violates both the U.S. Constitution and this Court's mandate. The remaining three factors likewise favor a stay and injunction pending appeal to protect constitutional rights, avoid confusion, and ensure federal-court review before any state-law remedy is put into effect.

## I. Justice Riggs is Likely to Prevail on the Merits

### A. Retroactive Changes in Election Law Violate the Federal Due Process Clause

As a matter of federal constitutional law, it "is settled that if the election process reaches the point of 'patent and fundamental unfairness,' the due process clause may be violated." *Hendon v. N.C. State Bd. Elections,* 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978)); *see also Roe v. Alabama*, 43 F.3d 574, 581 (11th Cir. 1995).

Patent and fundamental unfairness exists—and "a court will strike down an election on substantive due process grounds"—if "two elements are present: (1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures." *Bennett v. Yoshina*, 140 F.3d 1218, 1226–27 (9th Cir. 1998). Those elements are satisfied when, for example, "the losing candidate contest[s] the validity of the absentee ballots" cast in accordance with officially sponsored election

procedure. *Lecky v. Virginia State Bd. Elections*, 285 F. Supp. 3d 908, 916 (E.D. Va. 2018). Even if that procedure turns out to have been flawed in hindsight, a "state's retroactive invalidation" of those absentee ballots "violate[s] the voters' rights under the fourteenth amendment." *Burns*, 570 F.2d at 1070.

The two remaining categories of protests brought by Judge Griffin seek retroactive invalidation of ballots cast in compliance with the law. When military and overseas voters cast their ballots in November 2024, the North Carolina Administrative Code was clear that these voters were "*not* required to submit a photocopy of acceptable photo identification." 8 N.C. Admin. Code 17.0109(d) (emphasis added). And when the children of North Carolinians living overseas cast their ballots, the North Carolina statutes "plainly allow[ed] such individuals to vote in North Carolina." *Griffin v. N.C. State Bd. of Elections*, No. COA25-181, 2025 WL 1021724, at *37 (N.C. Ct. App. Apr. 4, 2025) (Hampson, J., dissenting).

Now, five months after the election, the North Carolina appellate courts have changed both sets of rules. Those state-law decisions may be binding in North Carolina moving forward, but they cannot apply retroactively regardless of whether such retroactive invalidation is "legal or illegal as a matter of state law." *McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 674 (1963). As a matter of federal law, the voters were entitled to rely on the law in effect when they cast their ballots.

12

The U.S. Constitution prohibits the State Board from discarding—or threatening to discard—ballots cast in compliance with existing law. The retroactive changes in election law impose a "severe burden" on the right to vote. *Pisano v. Strach*, 743 F.3d 927, 933 (4th Cir. 2014). Yet the district court's text order not only permits this retroactive, state-law remedy to go into effect; it requires the State Board to implement that remedy before the district court or this Court have considered the reserved federal-law issues.

### B. Arbitrary and Disparate Burdens on Voting Rights Violate the Federal Equal Protection Clause

"Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–05 (2000) (per curiam) (citing *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 665 (1966)). The district court's text order requires the State Board to violate this equal protection principle by burdening and threatening to disenfranchise the military and overseas voters who happened to cast their ballot in a county that Judge Griffin targeted.

Judge Griffin attempted to challenge military and overseas voters in, at most, six of North Carolina's one hundred counties. Judge Griffin brought a timely protest only to the military and overseas ballots cast in Guilford County, and he later attempted to expand his protest to include Durham, Forsyth, and Buncombe Counties. This selective targeting of military and overseas voters has no

13

constitutionally permissible justification. Only one potential basis for choosing those counties appears in the record: they "are each counties which [Judge Griffin] lost by significant margins." *Griffin v. N.C. State Bd. of Elections*, No. COA25-181, 2025 WL 1021724, at *41 n.23 (N.C. Ct. App. Apr. 4, 2025) (Hampson, J., dissenting). Regardless of intent, Judge Griffin's protests violate the Equal Protection Clause by creating a "preferred class of voters"—those voters who happened to cast a ballot in a county that Judge Griffin chose not to target. *Gray v. Sanders*, 372 U.S. 368, 379–80 (1963) ("The concept of 'we the people' under the Constitution visualizes no preferred class of voters but equality among those who meet the basic qualifications.").

The "cure" process for these military and overseas voters will also lead inevitably to the different treatment of identical voters based on arbitrary circumstances. An election procedure violates the Equal Protection Clause when "identically situated ballots" will be counted or invalidated "based on random chance." *Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 49 (S.D.N.Y. 2020); *see also Bryanton v. Johnson*, 902 F. Supp. 2d 983, 997 (E.D. Mich. 2012) ("inconsistent administration" of citizenship question). Yet the district court ordered and permitted the State Board to implement a process by which the targeted voters will have their ballots counted only if a series of conditions are met some *six months after the election*, when voters are no longer paying attention or expecting to be

14

contacted by election officials regarding their votes: (1) the voter must still be alive;

(2) the voter must receive notice of their duty to cure; (3) the voter must be able to

cure within a 30-day window; (4) the voter must be willing to take time out of their

day to cure; and (5) the voter must choose to cure (and not, for example, have

changed their mind in the intervening months about their preference for Associate

Justice or believe that their vote will not change the outcome).  None of these

conditions has anything to do with the voters' eligibility to cast a ballot in November

2024; they are arbitrary distinctions created by a retroactive change in the election

rules.

Courts routinely reject this type of disparate treatment of ballots.  The

Southern District of New York rejected a ballot-counting process dependent on the

delivery date of the ballot when the question of "[w]hether an individual's vote will

be counted . . . may depend in part on something completely arbitrary"—there, the

voter's "place of residence and by extension, the mailbox or post office where they

dropped off their ballot."  *Gallagher*, 477 F. Supp. 3d at 47.  This "voting process

where arbitrary factors lead the state to valuing one person's vote over that of

another" is the "kind of process specifically prohibited by the Supreme Court."  *Id*.

at 48 (citing *Bush*, 531 U.S. at 104–05); *see also Richardson v. Trump*, 496 F. Supp.

3d 165, 183–87 (D.D.C. 2020) (finding likelihood of success on claim that

challenged "policy changes infringe upon [plaintiffs'] constitutional right to vote

and violate the Equal Protection Clause"); *Vote Forward v. DeJoy*, 490 F. Supp. 3d 110, 125–28 (D.D.C. 2020) (same); *Doe v. Walker*, 746 F. Supp. 2d 667, 679–80 (D. Md. 2010) ("By imposing a deadline which does not allow sufficient time for absent uniformed services and overseas voters to receive, fill out, and return their absentee ballots, the state imposes a severe burden on absent uniformed services and overseas voters' fundamental right to vote.").

Justice Riggs respectfully submits that she is likely to prevail on appeal in her argument that selective targeting of military and overseas voters violates the Equal Protection Clause. Justice Earls' comments in partial dissent now apply with equal force to the district court's text order: "as a result of the action taken by [the district court] in this matter, the vote of an overseas or military voter who is registered in Wake County and who voted pursuant to the laws applicable at the time is counted," but "the vote of an overseas or military voter who is registered in Guilford County is presumed to be fraudulent and will not count unless that voter provides proof of their identity within thirty business days." *Griffin v. N.C. State Bd. of Elections*, No. 320P24-3, 2025 WL 1090903, at *3 (N.C. Apr. 11, 2025) (Earls, J., concurring in part in the result only, dissenting in part). It is "impossible" to explain how that distinction "is fair, just, or consistent with fundamental legal principles." *Id*.

**C. Implementing the State-Law Remedy Before the Federal-Law Issues Are Resolved Would Frustrate this Court's Mandate**

The U.S. Supreme Court has "repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).

A stay and injunction pending appeal are necessary and appropriate here to effectuate and prevent frustration of this Court's mandate. This Court directed the district court "to expressly retain jurisdiction of the federal issues identified in the Board's notice of removal should those issues remain after the resolution of the state court proceedings, including any appeals." *Griffin*, No. 25-1020, slip op. at 11. Justice Riggs then made an *England* reservation to protect her right to return to federal court, *see* Exhibit B, and the district court modified its remand order to make clear that it retained jurisdiction over the federal-law issues, *see* E.D.N.C. ECF No. 35.

Those federal-law issues remain unresolved, but the district court's text order permits—and directs—the State Board to proceed under state law anyway. Justice Riggs is likely to prevail on appeal in her argument that the text order is inconsistent with this Court's mandate—which ensured the "federal forum for certain federal

civil rights claims" that 28 U.S.C. § 1443 "guarantees," *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 141 S. Ct. 1532, 1536 (2021).

After all, the North Carolina courts had jurisdiction to proceed with this dispute only because the district court, having obtained jurisdiction, remanded it to the Wake County Superior Court. Under this Court's mandate, both judicial systems have been exercising jurisdiction over the same dispute—the North Carolina courts with respect to the state-law issues, and the federal courts with respect to the federal-law issues. But now, the district court's text order threatens to upset that balance by permitting (and requiring) the State Board to begin implementing that state-law remedy before the district court or this Court considered the federal-law issues that this Court and Justice Riggs expressly reserved for the federal courts.

## II.  The Other Three Factors Support a Stay and Injunction Pending Appeal

The threatened violations of the Due Process and Equal Protection Clauses justify a stay and injunction pending appeal because the "prospect of an unconstitutional enforcement 'supplies the necessary irreparable injury.'" *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 103 (4th Cir. 2022) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992)); *see also League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("Courts routinely deem restrictions on fundamental voting rights irreparable injury.").

Proceeding with the proposed cure process also poses a serious risk of irreparable harm directly to Justice Riggs by undermining the legitimacy of her election victory. The U.S. Supreme Court issued a stay in *Bush v. Gore*, forestalling various state-court remedies pending federal court review of the equal protection issues, because proceeding with a state process "of questionable legality" threatens irreparable harm to a candidate, as well as to the public, "by casting a cloud upon what [she] claims to be the legitimacy of [her] election." 531 U.S. 1046, 1047 (2000) (mem.) (Scalia, J., concurring).

Consistent with the Supreme Court's issuance of a stay in *Bush*, federal courts across the country allow candidates for office to assert *per se* irreparable harm based on constitutional violations resulting from improper election challenges. *See, e.g.*, *Moore v. Circosta*, 494 F. Supp. 3d 289, 321 (M.D.N.C. 2020); *Jones v. United States Postal Serv.*, 488 F. Supp. 3d 103, 109, 139–40 (S.D.N.Y. 2020); *Gallagher*, 477 F. Supp. 3d at 26, 41–42. One can barely imagine the chaos that would ensue if an arbitrary, non-uniform, and constitutionally improper state-law "cure" process suggested a change to the election outcome, only for this Court later to decide that Justice Riggs' constitutional arguments were meritorious and the "cure" process should never have proceeded. The proverbial toothpaste can never be put back in the tube, and that is exactly why the U.S. Supreme Court intervened in *Bush v. Gore*.

In addition, permitting the cure process to proceed will force Justice Riggs to invest substantial resources helping voters to cure their ballots. These resources will be wasted if the cure process is ultimately found to be unconstitutional under federal law, and that injury will be irreparable because there is no way for Justice Riggs to recover the time and money she spent in furtherance of an unconstitutional cure effort. *Cf. Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 362 (4th Cir. 1991) ("Without a preliminary injunction, the Company will face probable irreparable harm from the alleged violation of a federally protected right and will be prevented from recovering monetary compensation from the State.").

The balance of the equities and public interest also favor a stay and injunction pending appeal. When this case was last before the Court, it exercised its "discretion to refrain from resolving a case pending in federal court that involves state law claims and potential federal constitutional issues if the resolution of those unsettled questions of state law could obviate the need to address the federal issues." *Griffin*, No. 25-1020, slip op. at 11. As a sitting North Carolina Associate Justice, Justice Riggs understands better than most the federal judicial restraint and concerns of comity that underpin this Court's earlier decision. It is regrettable, but now unavoidable, that this Court must intervene to prevent a retroactive application of a state court ruling that infringes North Carolina voters' fundamental rights.

The challenged North Carolina voters were eligible to vote in November 2024, they followed every rule, and they acted in reliance on longstanding, unchallenged election laws. "Surely, upholding constitutional rights serves the public interest," *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003), especially when, as here, the threatened constitutional violation would erode the "fundamental" right to vote, *Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, 827 F.3d 333, 337 (4th Cir. 2016) (quoting *Bush*, 531 U.S. at 104–05). "Count first, and rule upon legality afterwards, is not a recipe for producing election results that have the public acceptance democratic stability requires." *Bush*, 531 U.S. at 1047 (Scalia, J., concurring).

## CONCLUSION

The Court should enter a stay and injunction pending appeal that prohibits the parties from taking any action to enforce or effectuate the state-law remedy.

Dated: April 16, 2025                    Respectfully submitted,

                                         /s/ Samuel B. Hartzell
                                         Raymond M. Bennett
                                         Samuel B. Hartzell
                                         Womble Bond Dickinson (US) LLP
                                         555 Fayetteville Street, Suite 1100
                                         Raleigh, NC 27601
                                         Office: 919.755.2158
                                         Fax: 919.755.6068
                                         Email: Ray.Bennett@wbd-us.com
                                                Sam.Hartzell@wbd-us.com

                                         *Counsel for Intervenor-Appellant*

21

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,129 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

Dated: April 16, 2025                          /s/ Samuel B. Hartzell
                                               Samuel B. Hartzell

                                               *Counsel for Intervenor-Appellant*