Nos. 25-1397 (L); 25-1398

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JEFFERSON GRIFFIN,
*Plaintiff-Appellee,*

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS,
*Defendant-Appellant,*

ALLISON RIGGS, NORTH CAROLINA ALLIANCE FOR RETIRED
AMERICANS, VOTEVETS ACTION FUND, TANYA WEBSTERDURHAM,
SARAH SMITH, AND JUANITA ANDERSON,
*Intervenor-Appellants.*

On Appeal from the United States District Court
for the Eastern District of North Carolina
Case No. 5:24-cv-731

## APPELLEE'S CONSOLIDATED RESPONSE
## TO MOTIONS FOR INJUNCTION PENDING APPEAL

Thomas R. McCarthy
Gilbert C. Dickey
Conor D. Woodfin
William Bock IV
Consovoy McCarthy
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com

*Counsel for Jefferson Griffin*

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

Introduction .................................................................................................................. 1

Background .................................................................................................................... 1

Argument ....................................................................................................................... 3

    I.    This Court lacks jurisdiction over the appeals. ....................................... 3

    II.   Movants don't show how they will suffer irreparable harm after the
        district court awarded partial relief. ......................................................... 6

    III.  Movants are not likely to succeed on the merits. ................................... 9

        A.  The North Carolina courts provided months of due process. ..................... 9

            1. At most, Movants allege a "garden variety" election issue. ................ 11

            2. Movants don't prove "massive" disenfranchisement. .......................... 12

        B.  The *Anderson-Burdick* test forecloses Movants' other constitutional
           claims. ..................................................................................................... 14

            1. Movants allege only *de minimis* burdens. ....................................... 15

            2. Enforcement of North Carolina's election laws is justified by
               compelling state interests. .................................................................. 16

        C.  Routine election challenges do not violate the Equal Protection
           Clause ...................................................................................................... 17

    IV.  The equities and public interest weigh against interfering with state court
        judgments. .................................................................................................. 19

Conclusion .................................................................................................................. 20

Certificate of Compliance ........................................................................................ 22

Certificate of Service ................................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*All. for Retired Ams. v. Sec'y of State,*
240 A.3d 45 (Me. 2020) ................................................................ 8

*Anderson v. Celebrezze,*
460 U.S. 780 (1983) ...................................................................17

*Bell v. Marinko,*
367 F.3d 588 (6th Cir. 2004) .......................................................10

*Bennett v. Medtronic, Inc.,*
285 F.3d 801 (9th Cir. 2002) ........................................................ 6

*Bennett v. Yoshina,*
140 F.3d 1218 (9th Cir. 1998) ........................................... 9, 12, 13

*Burdick v. Takushi,*
504 U.S. 428 (1992) ...........................................................14, 15, 16

*Bush v. Gore,*
531 U.S. 98 (2000) ............................................................... 17, 18

*Carrington v. Rash,*
380 U.S. 89 (1965) .....................................................................10

*Carson v. Simon,*
978 F.3d 1051 (8th Cir. 2020) .....................................................20

*Ciena Corp. v. Jarrard,*
203 F.3d 312 (4th Cir. 2000) ......................................................... 5

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ...................................................................... 9

*Common Cause/Ga. v. Billups,*
554 F.3d 1340 (11th Cir. 2009) ...................................................14

*Crawford v. Marion Cnty. Election Bd.,*
553 U.S. 181 (2008) ..........................................................8, 15, 16

*Democratic Party of Va. v. Brink,*
599 F. Supp. 3d 346 (E.D. Va. 2022) ...............................14, 15, 16

*Dep't of Educ. v. California,*
145 S. Ct. 966 (2025) .................................................................3, 5

*DNC v. Wis. State Legislature,*
141 S. Ct. 28 (2020) ....................................................................................17

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. 215 (2022) ......................................................................................9

*Donald J. Trump for President, Inc. v. Sec'y of Pa.,*
830 F. App'x 377 (3d Cir. 2020) ...............................................................18

*Drudge v. McKernon,*
482 F.2d 1375 (4th Cir. 1973) ...................................................................6

*Dudum v. Arntz,*
640 F.3d 1098 (9th Cir. 2011) ..................................................................17

*Dunn v. Blumstein,*
405 U.S. 330 (1972) ....................................................................................10

*Election Integrity Project Cal. v. Weber,*
113 F.4th 1072 (9th Cir. 2024) .................................................................12

*Eu v. S.F. Cnty. Democratic Central Comm.,*
489 U.S. 214 (1989) ....................................................................................17

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers,*
415 U.S. 423 (1974) ..................................................................................4, 5

*Griffin v. Burns,*
570 F.2d 1065 (1st Cir. 1978) ..........................................................passim

*Griffin v. N.C. State Bd. of Elections,*
2025 WL 1021724 (N.C. Ct. App. Apr. 4, 2025) ................................16, 19

*Griffin v. N.C. State Bd. of Elections,*
2025 WL 1090903 (N.C. Apr. 11, 2025) ...........................................passim

*Griffin v. Riggs,*
Doc. 132, No. 25-1018 (4th Cir. Feb. 4, 2025) ......................................1, 6

*Hendon v. N.C. State Bd. of Elections,*
710 F.2d 177 (4th Cir. 1983) ................................................................18, 19

*Hilton v. Braunskill,*
481 U.S. 770 (1987) ......................................................................................3

*Holt Civic Club v. City of Tuscaloosa,*
439 U.S. 60 (1978) ......................................................................................10

*Hutchinson v. Miller,*
797 F.2d 1279 (4th Cir. 1986) .......................................................1, 12, 20

*Kim v. Bd. of Educ.*,
    641 F. Supp. 3d 223 (D. Md. 2022) ................................................................ 18

*League of Women Voters of S.C. v. Andino*,
    849 F. App'x 39 (4th Cir. 2021) ...................................................................... 7

*Lemons v. Bradbury*,
    538 F.3d 1098 (9th Cir. 2008) ................................................................. 17, 18

*Libertarian Party of Va. v. Alcorn*,
    826 F.3d 708 (4th Cir. 2016) .......................................................................... 16

*McDonald v. Bd. of Election Comm'rs of Chi.*,
    394 U.S. 802 (1969) ....................................................................................... 15

*Ne. Ohio Coal. for the Homeless v. Husted*,
    837 F.3d 612 (6th Cir. 2016) .......................................................................... 18

*New Ga. Project v. Raffensperger*,
    976 F.3d 1278 (11th Cir. 2020) ...................................................................... 14

*Nolles v. State Comm. for Reorganization*,
    524 F.3d 892 (8th Cir. 2008) .......................................................................... 12

*Pa. Democratic Party v. Boockvar*,
    238 A.3d 345 (Pa. 2020) .................................................................................. 8

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ..................................................................................... 16, 19

*Reynolds v. Sims*,
    377 U.S. 533 (1964) ................................................................................. 11, 19

*Roe v. Dep't of Def.*,
    947 F.3d 207 (4th Cir. 2020) ............................................................................ 9

*Sampson v. Murray*,
    415 U.S. 61 (1974) ........................................................................................... 5

*Snead v. City of Albuquerque*,
    663 F. Supp. 1084 (D.N.M. 1987) ................................................................. 10

*Tex. LULAC v. Hughs*,
    978 F.3d 136 (5th Cir. 2020) .......................................................................... 15

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997) ....................................................................................... 14

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ......................................................................................... 9

*Wise v. Circosta*,
    978 F.3d 93 (4th Cir. 2020) ............................................................................... 3, 17

**Statutes**

N.C.G.S. §163-230.1 ............................................................................................. 15

**Other Authorities**

Joshua A. Douglas, *Procedural Fairness in Election Contests*,
    88 Ind. L.J. 1 (2013) ....................................................................................... 19

Wright & Miller, *Federal Practice and Procedure* §3922.1 (3d ed. 2012) ........................ 3, 5, 6

**Rules**

Fed. R. App. P. 8(a) ............................................................................................... 3

## INTRODUCTION

Movants appeal a non-appealable temporary restraining order that the district court partially *granted*. If the posture is extraordinary, the merits are more extraordinary still: Movants seek to enjoin enforcement of a judgment of the North Carolina Supreme Court applying state law to a state election dispute. "Had the framers wished the federal judiciary to umpire election contests, they could have so provided." *Hutchinson v. Miller*, 797 F.2d 1279, 1288 (4th Cir. 1986). But "[o]ur constitution does not contemplate that the federal judiciary routinely will pass judgment on particular elections" for "state" office. *Id.* at 1280.

The last time these same parties rushed to the Fourth Circuit, this Court said they were too early. *See Griffin v. Riggs*, Doc. 132, No. 25-1018 (4th Cir. Feb. 4, 2025). They are too early again. The district court granted the Movants' TRO request in part, staying certification of the election and expediting briefing on the federal issues. In just a few hours, Judge Griffin is filing a brief in the district court on those issues. Until the district court rules on those pending preliminary-injunction motions, this Court lacks jurisdiction.

## BACKGROUND

This state election contest began when Judge Griffin alleged that illegal votes were cast in the North Carolina Supreme Court election. The State's highest court confirmed that Judge Griffin was right. *Griffin v. N.C. State Bd. of Elections*, 2025 WL 1090903, at *3 (N.C. Apr. 11, 2025) ("*Griffin II*"). It held that the state constitution

prohibits "never residents"—persons "who have never been domiciled or resided in North Carolina or expressed an intent to live in North Carolina"—from voting in state elections. *Id.* It also held that state law requires overseas voters who submit absentee ballots to provide "photo identification." *Id.* Because that error is curable, the Court gave the overseas voters "thirty calendar days after the mailing of notice" to "cure deficiencies arising from lack of photo identification." *Id.*

Dissatisfied with that ruling, Movants filed preliminary-injunction and TRO motions in the district court.[1] The court granted the motions in part, staying certification of the election and expediting briefing on the federal claims. Apr. 12 Minute Order.[2] Still dissatisfied, Movants seek further relief from this Court. They claim that *beginning* the notice-and-cure process—even if election certification is stayed pending resolution of their federal claims—will cause them irreparable harm. Movants demand that this Court enjoin the "parties from taking any action to enforce or effectuate the state-law remedy" ordered by the North Carolina Supreme Court. Riggs Br.21.

---

[1] Movants are Justice Riggs and the three groups led by the League of Women Voters of North Carolina, the North Carolina Democratic Party, and VoteVets. Judge Griffin is a party only in the consolidated case (25-1397), but he directs this response to all four motions filed in Nos. 25-1397, 25-1399, and 25-1401.

[2] Unless otherwise noted, minute orders and "Doc." numbers refer to the consolidated docket in No. 5:24-cv-731 (E.D.N.C.).

# ARGUMENT

"[A]n injunction pending appeal" is an "'extraordinary and drastic remedy.'" *Wise v. Circosta*, 978 F.3d 93, 96, 103 (4th Cir. 2020) (en banc). To prevail, Movants must make "a strong showing" that they are "likely to succeed on the merits;" that they "will be irreparably injured" absent relief; that the relief will not "substantially injure the other parties interested in the proceeding," and that "the public interest" favors issuing the injunction. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citing Fed. R. App. P. 8(a)). The "remedy would be particularly extraordinary here, where the injunction would be granted by a federal appellate court in the first instance—after a federal trial court … declined to do so," and after a state supreme court *ordered* the conduct Movants seek to enjoin. *Wise*, 978 F.3d at 96.

## I.    This Court lacks jurisdiction over the appeals.

"[T]he Courts of Appeals generally lack appellate jurisdiction over appeals from" orders granting or denying "TROs." *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025). The point of a TRO is "to preserve the opportunity to rule in orderly fashion upon a request for longer-lasting preliminary relief." Wright & Miller, *Federal Practice & Procedure* §3922.1 (2012). That's what the district court did here. In a Sunday order, the court enjoined certification of the election pending resolution of Justice Riggs' preliminary-injunction motion, and it expedited briefing "to facilitate prompt resolution of this matter." Apr. 12 Minute Order. Two days later, the court consolidated other cases raising similar issues "to promote judicial economy." Apr. 14 Minute Order.

Movants can't get around these well-established rules by reclassifying the district court's minute orders as denials of the preliminary-injunction motions. The district court didn't "deny[] the substance of Justice Riggs' motion." *Contra* Riggs Br.8. It "GRANTED" the "PART" of the motion that requested a stay of election certification, preserving review of the remaining issues after expedited briefing. Apr. 12 Minute Order. Movants also can't reclassify the minute orders as granting any injunction. By "direct[ing] the North Carolina State Board of Elections 'to proceed in accordance with the North Carolina Court of Appeals opinion,'" the district court "did nothing more than decline to interfere" with the judgments issued "by the North Carolina Court of Appeals and North Carolina Supreme Court." Doc.60 at 2. Movants misconstrue the district court's order as requiring the Board of Elections to "commence" the cure process. LWV Br.22. But those state court judgments apply of their own force. The state courts, not the district court, are currently handling disputes over the scope of the remedy.

To the extent the district court denied any relief that weekend, it was only the part of the TRO motion requesting immediate, complete relief on the federal claims. As the district court explained, "Justice Riggs styled her motion as one for an 'injunction,' but she requested 'Immediate Relief' on an 'Emergency' basis." Doc.60 at 2 n.1 (quoting Doc.40 at 1). Following binding precedent, the district court "treated her motion as one for a temporary restraining order." *Id.* (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 432 n.7 (1974); *Ciena Corp. v. Jarrard*,

203 F.3d 312, 319 (4th Cir. 2000)). Those cases indicate that preliminary-injunction proceedings generally "contemplate[] notice of at least two days, with a meaningful opportunity to prepare for the hearing" before the court rules on a preliminary-injunction motion. *Granny Goose*, 415 U.S. at 432 n.7. Here, the district court "obviously felt" that only one side's briefing "was not a sufficient basis for ruling on the preliminary injunction." *Id.*

So the district court didn't deny a preliminary injunction—it *granted* a TRO in part and expedited briefing on the remaining issues. Any doubt about that fact is put to rest by the other Movants, who styled their motions as requests for "Temporary Restraining Order[s]." Doc.36, No. 5:24-cv-699; Doc.12, 5:25-cv-193. That Justice Riggs was vague about the relief she sought does not change the nature of the district court's decision.

Movants appeal the denial of a TRO, but none try to justify this Court's jurisdiction. Generally, "temporary restraining orders are not appealable." Wright & Miller, *supra*, §3922.1. Although TROs are sometimes appealable when they resemble a preliminary injunction, the district court's minute orders carry none "of the hallmarks of a preliminary injunction." *Dep't of Educ.*, 145 S. Ct. at 968. The orders do not "run[] beyond the twenty-eight-day maximum set for a temporary restraining order" under Rule 65(b)(2). Wright & Miller, *supra*, §3922.1. The district court has not yet "held" an "adversary hearing" on the motions. *Sampson v. Murray*, 415 U.S. 61, 87 (1974). And the parties have not yet "had an opportunity to file extensive written materials and present

5

oral argument." *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002). That the court expedited those deadlines shows that its order "possess[es] the essential features of a temporary restraining order," and thus should not be "treated like a preliminary injunction." *Id.*

Ignoring these principles will hinder resolution of this case at all levels. Taking up these issues out of order will "intrude on the ability of the district court to proceed promptly to an expanded hearing and determination of the preliminary injunction request." Wright & Miller, *supra*, §3922.1. Judge Griffin now has briefs due in this Court and the district court on the same day. This Court instructed the district court to consider the federal issues "after the resolution of the state court proceedings." *Griffin*, Doc. 132, No. 25-1018. But if this Court were to step in now, it would undermine the district court's careful balance of this Court's mandate and the need "to facilitate prompt resolution of this matter." Apr. 12 Minute Order. When this Court "lack[s] jurisdiction" over a non-appealable "denial" of a "temporary restraining order," the solution is to "den[y]" the motion and "dismiss[]" the appeal. *Drudge v. McKernon*, 482 F.2d 1375, 1376 (4th Cir. 1973).

## II. Movants don't show how they will suffer irreparable harm after the district court awarded partial relief.

Even if this Court had jurisdiction, Movants have not shown that they will suffer irreparable harm. The district court partially "GRANTED" Movants' request for emergency relief. Apr. 12 Minute Order. By ordering that the Board "SHALL NOT

certify the results of the election, pending further order," *id.*, the Court resolved Movants' concerns that the disputed votes would not be counted. To obtain *further* relief from this Court, it's not enough to show that counting those votes would violate federal law; the district court's order preserves the status quo to resolve those questions. Rather, Movants must show—as they admit—that the relief "ordered by the district court" on April 12 "violates both the U.S. Constitution and this Court's mandate." Riggs Br.9.

No Movant identifies an irreparable harm they will suffer over the next two weeks as the district court resolves the pending preliminary injunctions. Movants repeat their refrain that not counting the disputed votes will "disenfranchise" voters. *E.g.*, Riggs Br.13. But until "further order" of the district court, no disputed votes will be removed from the final tally. Apr. 12 Minute Order. So Movants' allegations of disenfranchisement ring hollow. Movants claim that ballots will be "identified for removal," NCDP Br.19, and "presumptively omitted from the count," LWV Br.18 (cleaned up). But no ballots will be removed from the count unless the district court denies Movants' preliminary-injunction motions.

Because Movants can't point to the removal of ballots, they suggest that a "burdensome cure process" will harm voters. VV Br.18. But the opportunity to cure deficient ballots isn't a burden at all. It's *process*. In fact, it's a process Movants routinely argue is constitutionally required. The League of Women Voters "moved for a preliminary injunction" in South Carolina "notice and the opportunity to cure [signature] deficienc[ies]." *League of Women Voters of S.C. v. Andino*, 849 F. App'x 39, 41

(4th Cir. 2021). The Democratic Party petitioned the Pennsylvania Supreme Court to require the state board of elections to "contact qualified electors whose mail-in or absentee ballots contain minor facial defects … and provide them with an opportunity to cure those defects." *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 372 (Pa. 2020). The Alliance for Retired Americans sought a preliminary injunction against the Maine Secretary of State to provide every "voter notice and an opportunity to cure their ballot or verify their identity." *All. for Retired Ams. v. Sec'y of State*, 240 A.3d 45, 48 (Me. 2020).

Now, Movants change their tune. Those same organizations argue that the North Carolina Supreme Court's generous post-election cure procedures are too burdensome for voters. But "[a] photo identification requirement" doesn't "even represent a significant increase over the usual burdens of voting." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197-98 (2008) (plurality op.). Much less does a notice and 30-day opportunity to *cure* an I.D. requirement impose "irreparable injury." *Contra* LWV Br.19.

Even less plausible are the alleged burdens on Justice Riggs or the private interest groups. Justice Riggs argues that "permitting the cure process to proceed will force Justice Riggs to invest substantial resources helping voters to cure their ballots." Riggs Br.20. The Democratic Party claims it will need to "devote limited time and resources to contact [noncompliant voters] and convince them to participate" in the cure process. NCDP Br.19. VoteVets says it will have to "rapidly deploy scarce resources" to contact those noncompliant voters. VV Br.20. But "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of an injunction

8

are not enough." *Roe v. Dep't of Def.*, 947 F.3d 207, 228 (4th Cir. 2020) (cleaned up). And Movants haven't explained why these alleged expenses are necessary since the Board is providing notice. "[S]elf-inflicted injuries" based on a "subjective fear" of harm are not irreparable. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416-18 (2013). Movants have not identified an irreparable harm that the district court didn't already address by staying the election's certification.

**III.  Movants are not likely to succeed on the merits.**

   **A.     The North Carolina courts provided months of due process.**

Movants ask to expand a substantive-due-process right never recognized by the Supreme Court. Courts must "exercise the utmost care" when expanding substantive due process, *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), and keep within the limits of "history and tradition," *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 240 (2022). Movants rely instead on out-of-circuit caselaw that didn't perform that historical analysis. *See Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978); *Bennett v. Yoshina*, 140 F.3d 1218 (9th Cir. 1998). From those cases, they invite this Court to grade the papers of state courts, creating a substantive right to vote according to the guidance of election officials, not state statutes and the state constitution as interpreted by state courts.

Movants' request goes far beyond even what those out-of-circuit authorities allowed. Where those decisions emphasized the absence of any cure process, Movants argue that North Carolina's cure process is *itself* a constitutional violation. And where those decisions concerned qualified voters who had been misinformed about election

9

process, Movants seek to compel North Carolina to count the ballots of unqualified voters.

Start with the Never Residents who, under state law, are not qualified voters. Movants' argument "proceeds from the assumption"—now "shown to be erroneous"—that these non-residents "have a right to vote in [North Carolina] elections." *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 75 (1978). North Carolina "has unquestioned power to impose reasonable residence restrictions of the availability of the ballot." *Carrington v. Rash*, 380 U.S. 89, 91 (1965). It may "restrict the vote" to "residents" who are "bona fide." *Dunn v. Blumstein*, 405 U.S. 330, 334 (1972). "Eligible voters," under North Carolina law, are "at a minimum," those who "qualify as bona fide residents." *Cf. Bell v. Marinko*, 367 F.3d 588, 592 (6th Cir. 2004). Were the Court to find that "removal" of the Never Residents' votes violates federal law, it "would effectively grant, and then protect, the franchise of persons not eligible to vote." *Id.* As to those "non-residents," there is "no due process violation." *Snead v. City of Albuquerque*, 663 F. Supp. 1084, 1089 (D.N.M.), *aff'd*, 841 F.2d 1131 (10th Cir. 1987).

As for the overseas voters, the supreme court's expansion of the notice-and-cure process to a full month for voters to provide photo-ID is *enfranchising*. The First Circuit recognized that "election irregularities" aren't "usually" unconstitutional "where adequate state corrective procedures exist." *Burns*, 570 F.2d at 1077. The court found a violation where there was "no standard state procedure for handling a claim" and "the state court did not confront the questions that retroactive application of its ruling would

10

create." *Id* at 1079. Here, the North Carolina Supreme Court expressly considered those "questions," *id.*, expanding the cure period to 30 days after notice, *Griffin II*, 2025 WL 1090903, at *3. Movants don't grapple with this shortcoming in their argument. Instead, they insist—contrary to their own best authority—that the state remedial process itself is a substantive due process violation. *E.g.*, NCDP Br.12-14.

Movants can't square their argument that a cure process is unconstitutional with the remedy in *Burns*—"a new primary" election. 570 F.2d at 1066. Movants' challenge to the state cure process has forced them to ask for a remedy far more intrusive on the state courts' authority to decide state law. The North Carolina courts have ruled that the overseas voters cast invalid ballots under state law at the time; Movants insist that those ballots must be counted anyway. But they provide no authority to support that remedy because a voter relies on incorrect guidance from state officials.

Other substantive rights Movants propose make even less sense. Only "qualified voters have a constitutionally protected right to vote … and to have their votes counted." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). No voter has a right to a presumption that their ballot is valid. *Contra* LWV Br.9-10. And the history of election contests shows that voters don't have a right to prevent a once-counted ballot from being excluded after a deficiency is discovered.

### 1.    At most, Movants allege a "garden variety" election issue.

Even if Movants had identified a substantive right at stake, they've not shown that the state court judgments infringe on that right. All federal "circuit courts have

uniformly declined" to intervene on substantive due process grounds in a state election "with respect to garden variety election irregularities." *Hutchinson*, 797 F.2d at 1283 (cleaned up). That's because of "the constitutional recognition" that States "are primarily responsible for their own elections," *id.* (cleaned up), and that state supreme courts are "the final arbiter[s]" of their own State's laws, *Bennett*, 140 F.3d at 1225. Federal courts are "powerless to review" a state supreme court election decision, "even if" they think "it was wrong or contrary to general principles of election laws." *Id.* "[E]rrors, irregularities, *ex post* changes in law or procedure, and fraud will not amount to a denial of due process if they are of the 'garden variety' sort," even if those irregularities "control the outcome" of the election. *Election Integrity Project Cal. v. Weber*, 113 F.4th 1072, 1096 (9th Cir. 2024) (cleaned up); *accord Nolles v. State Comm. for Reorganization*, 524 F.3d 892, 898-99 (8th Cir. 2008). The North Carolina courts didn't "change[]" the law—they applied it. *Weber*, 113 F.4th at 1097. Movants' complaints of "post-election state law rulings," LWV Br.1, are true of every state election contest and are thus "garden variety" issues, *Weber*, 113 F.4th at 1097.

### 2. Movants don't prove "massive" disenfranchisement.

Even if Movants had identified more than a "garden variety" election issue, only "massive" disenfranchisement—analogous to "10 percent of the total votes cast"—can sustain a substantive due process claim. *Bennett*, 140 F.3d at 1226-27 (citing *Burns*, 570 F.2d at 1068). And the problems must be so widespread that they "permeate[] an election," *Burns*, 570 F.2d at 1077, not just a handful of affected voters. As Section III.

.A explains, no voter is disenfranchised: the overseas voters will have an opportunity to cure their ballots and have their votes counted, and the Never Residents were never qualified to vote in the first place.

Even assuming Movants' false premise that these groups will be "disenfranchised," Movants fall far short of the "massive" number of votes required to upset a settled state process. *Bennett*, 140 F.3d at 1226-27. Justice Riggs alleges "1,409 ballots" cast by voters without a photo-ID and "266 ballots" who have never "resided in North Carolina" are affected by the Court's order. Riggs Br.3. That's less than 0.03% of the more than 5.5 million votes cast in the disputed election. The high water mark identified by the NCDP is "nearly 5,500 voters" if the court of appeals grants Judge Griffin's motion to clarify the affected counties. NCDP Br.3. But that's still orders of magnitude below the "10 percent of the total votes cast" that is the kind of "massive" disenfranchisement Movants need to show, *Bennett*, 140 F.3d at 1226.

Moreover, the North Carolina Supreme Court's order requires all voters who cast their ballots without a photo-ID be notified and given the opportunity to cure and have their votes counted. That fact further distinguishes *Burns*, which involved "the cancelling of the ballots" of 10% of voters with no opportunity to cure. 570 F.2d at 1079. There, when election problems "permeate[d] an election," as Movants have the burden to show, the court ordered "that a new [election] be held." *Id.* at 1077. No Movant here demands that extraordinary relief.

13

**B.    The *Anderson-Burdick* test forecloses Movants' other constitutional claims.**

Movants acknowledge that *Anderson-Burdick* applies to their right-to-vote claim, but they argue that *Mathews v. Eldridge* applies to their due-process claim. While this Court "has not addressed this issue, all three circuits to consider the question have applied *Anderson/Burdick* instead of *Mathews*." *Democratic Party of Va. v. Brink*, 599 F. Supp. 3d 346, 361 (E.D. Va. 2022) (collecting cases). Even if *Mathews* applied, it's "conceptually duplicative" of *Anderson-Burdick* and requires the same outcome here. *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1282 (11th Cir. 2020).

Under *Anderson-Burdick*, Movants must satisfy a two-step test. They shoulder a heavy burden on each step, because rules that govern elections are "'inevitabl[e]'" and "necessar[y]" if elections are to be "'honest'" and "'order[ly].'" *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). First, Movants must provide "admissible and reliable evidence that quantifies the extent and scope" of the burden on the right to vote. *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1354 (11th Cir. 2009). Second, Movants must show that the burden outweighs the State's interests. *Timmons*, 520 U.S. at 358. Only when an election procedure "subject[s]" voting rights "to severe restrictions" does a court apply strict scrutiny. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (cleaned up). Election procedures that "impose[] only 'reasonable, nondiscriminatory restrictions'" are "'generally'" justified by "'the State's important regulatory interests.'" *Id.*

### 1.    Movants allege only *de minimis* burdens.

There's no constitutional right to be free from "the usual burdens of voting." *Crawford*, 553 U.S. at 198 (plurality op.). Even "the inconvenience of making a trip to the BMV, gathering the required documents, and posing for a photograph" to obtain an identification is not "a significant increase over the usual burdens of voting." *Id.* at 198. Movants argue that complying with the cure process is a "burden[]." Riggs Br.13. But "the notice and cure process in this case can never be said to disenfranchise a voter because, if a voter follows instructions, their vote will be counted," *Brink*, 599 F. Supp. 3d at 362. A "[r]easonable regulation of elections" "*does* require [voters] to act in a timely fashion." *Burdick*, 504 U.S. at 438.

Movants argue the notice-and-cure deadline is too early. But the date is "reasonably related to the state's need to process absentee ballots in a timely fashion." *Brink*, 599 F. Supp. 3d at 363. And the court-ordered 30-day cure period is ten times longer than state law ordinarily allows. *See* N.C.G.S. §163-230.1(e1). Movants also speculate that a voter could miss the cure deadline because of postal delays, but "any postal delays would also be out of the state's control." *Brink*, 599 F. Supp. 3d at 362 n.20; *see also McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 809-10 & 810 n.8 (1969). Movants haven't "cited any authority suggesting that a State must afford every voter multiple infallible ways to vote." *Tex. LULAC v. Hughes*, 978 F.3d 136, 146 (5th Cir. 2020).

### 2. Enforcement of North Carolina's election laws is justified by compelling state interests.

Where the State's election procedures impose only a minimal burden, "'important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434. The State need only "'articulate its asserted interests.'" *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 719 (4th Cir. 2016). Here, the North Carolina Supreme Court agreed that the State had compelling interests in not counting unlawful ballots.

**First,** North Carolina has a compelling interest in protecting its citizens from "unlawful votes" which "disenfranchise[] those voters who cast legal ballots." *Griffin II*, 2025 WL 1090903, at *2 (cleaned up). "'[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.'" *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (cleaned up).

**Second,** the State has a compelling interest in "'a fair count'" which must be "'held inviolable to preserve our democracy.'" *Griffin v. N.C. State Bd. of Elections*, 2025 WL 1021724, at *7 (N.C. Ct. App. Apr. 4, 2025) ("*Griffin I*"). "There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters." *Crawford*, 553 U.S. at 196. "[D]ue to the minimal burden placed on voters" and North Carolina's numerous "interests that multiple courts have upheld as

16

important in the past," Movants "fail to state a claim for relief as a matter of law." *Brink*, 599 F. Supp. 3d at 364.

**Third**, the 30-day deadline is "reasonably related to the state's need to process absentee ballots." *Id.* at 363. "Elections must end sometime." *DNC v. Wis. State Legislature*, 141 S. Ct. 28, 28 (2020) (Gorsuch, J., concurring). And the notice-and-cure procedure furthers the State's weighty interest in ensuring that only lawful votes are counted. *Eu v. S.F. Cnty. Democratic Centr. Comm.*, 489 U.S. 214, 231 (1989).

## C. Routine election challenges do not violate the Equal Protection Clause

Movants' equal-protection claims fail at the outset because the *Anderson-Burdick* test, not *Bush v. Gore*, applies to equal-protection challenges to state law. "The Supreme Court has addressed [Equal Protection] claims" against state election laws using the "single analytic framework" of *Anderson-Burdick*. *Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir. 2011). So Movants' equal-protection claims fail for the same reason their other claims fail. *See supra* Section III.B. In any event, *Bush* was "limited to the present circumstances" of that case. 531 U.S. 98, 109 (2000). And for at least four other reasons, *Bush* doesn't apply.

**First**, "*Bush* is of limited precedential value." *Wise*, 978 F.3d at 100 n.7. Circuit courts have questioned whether *Bush* applies "to more than the one election to which the Court appears to have limited it." *E.g.*, *Lemons v. Bradbury*, 538 F.3d 1098, 1106 (9th Cir. 2008). "[I]n the context of a Presidential election, state-imposed restrictions

17

implicate a uniquely important national interest." *Anderson v. Celebrezze*, 460 U.S. 780, 794-95 (1983). But that uniquely national interest isn't implicated here. Outside the context of "an election for the President of the United States," "comity and respect for federalism compel us to defer to the decisions of state courts on issues of state law." *Bush*, 531 U.S. at 112 (Rehnquist, C.J., concurring).

**Second**, "*Bush* applies" if at all, "only in 'special … circumstances' not present in this case." *Kim v. Bd. of Educ.*, 641 F. Supp. 3d 223, 236 (D. Md. 2022), *aff'd*, 93 F.4th 733 (4th Cir. 2024). *Bush* is cabined to "the special instance of a statewide recount under the authority of a single state judicial officer." 531 U.S. at 109. That recount provided election officials with no standards by which to determine voter "intent" when examining ambiguously marked ballots, resulting in disparate treatment of similarly situated voters across counties. *Id.* at 105-06. Here, the ID and residency requirements are "sufficiently uniform and specific to ensure equal treatment of voters." *Lemons*, 538 F.3d at 1106. There's no ambiguous enforcement.

**Third**, *Bush* reaffirmed that, to address the "many complexities" of election processes, "local entities" may "develop different systems." *Id.* "[T]he methods by which a voter casts his vote may vary throughout the state" without violating the Equal Protection Clause. *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 181 (4th Cir. 1983). "Even when boards of elections 'vary … considerably' in how they decide to reject ballots, those local differences in implementing statewide standards do not violate equal

protection." *Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 F. App'x 377, 388 (3d Cir. 2020) (quoting *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 635-36 (6th Cir. 2016)). Under Movants' theory, the Equal Protection Clause requires every candidate contesting an election to file in every county across the State. But given various constraints, candidates routinely file in only a handful of counties. *See* Joshua A. Douglas, *Procedural Fairness in Election Contests*, 88 Ind. L.J. 1, 18 (2013).

**Fourth**, proving a violation of the Equal Protection Clause requires allegations that the State "place[d] an onerous burden on voters' exercise of their right to vote." *Hendon*, 710 F.2d at 181. But as explained in Section III.B, *supra*, the notice-and-cure process doesn't burden the right to vote and is supported by compelling state interests.

## IV. The equities and public interest weigh against interfering with state court judgments.

The equities have only moved further in Judge Griffin's favor since this case was last before the Court. Movants now ask the Court to require the Board to count ballots that are "unlawful" under state law. *Griffin I*, 2025 WL 1021724, at *14. But "[t]o permit unlawful votes to be counted along with lawful ballots in contested elections effectively 'disenfranchises' those voters who cast legal ballots." *Griffin II*, 2025 WL 1090903, at *1 (cleaned up). The public has an interest in preserving the integrity of its elections. *Purcell*, 549 U.S. at 4. And the equities favor ensuring that unlawful votes don't dilute lawful votes. *Reynolds*, 377 U.S. at 555.

The public interest is also served by allowing the North Carolina courts to enforce state law adopted by the North Carolina General Assembly. Movants would prefer to enforce executive regulations. *E.g.*, Riggs Br.12. But "allow[ing] an executive branch official to negate the duly-enacted election laws of a state" is "toxic to the concepts of the rule of law and fair elections." *Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020). "[I]t is in the public interest to maintain the integrity of elections by ensuring the ability to separate and count only those ballots cast according to law." *Id.*

Finally, the equities weigh against intruding on the state election contest. To enjoin enforcement of state court judgments would "intrude on the role of the states," "raise the possibility of inconsistent judgments concerning elections," "erode the finality of results," "give candidates incentives to bypass the procedures already established," and "involve federal courts in the details of state-run elections." *Hutchinson*, 797 F.2d at 1285. For these reasons, "the balance of harms weighs in favor of preserving the ability to uphold the duly enacted election law" of North Carolina. *Carson*, 978 F.3d at 1061.

## CONCLUSION

This Court should deny the motions.

Dated: April 21, 2025                    Respectfully submitted,

                                         _/s/ Thomas R. McCarthy_

                                         Thomas R. McCarthy
                                         Gilbert C. Dickey
                                         Conor D. Woodfin
                                         William Bock IV
                                         CONSOVOY MCCARTHY PLLC
                                         1600 Wilson Blvd., Ste. 700
                                         Arlington, VA 22209
                                         (703) 243-9423
                                         tom@consovoymccarthy.com
                                         gilbert@consovoymccarthy.com
                                         conor@consovoymccarthy.com
                                         wbock@consovoymccarthy.com

                                         *Counsel for Jefferson Griffin*

## CERTIFICATE OF COMPLIANCE

This motion complies with Rule 27(d)(2)(A) because it contains 5,190 words, excluding the parts that can be excluded. This motion complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font. This motion and its attachments were scanned for viruses and are virus free.

Dated: April 21, 2025                           */s/ Thomas R. McCarthy*

## CERTIFICATE OF SERVICE

I filed this brief with the Court via ECF, which will electronically notify all parties.

Dated: April 21, 2025                    _/s/ Thomas R. McCarthy_____