No. 25-1397(L)
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT
_____

JEFFERSON GRIFFIN,
*Plaintiff – Appellee*,

v.

ALLISON RIGGS,
*Intervenor – Appellant*,

and

NORTH CAROLINA STATE BOARD OF ELECTIONS,
*Defendant – Appellee*,

and

NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS; VOTEVETS ACTION FUND; TANYA WEBSTER-DURHAM; SARAH SMITH; JUANITA ANDERSON,
*Intervenors*.
_____

On Appeal from the United States District Court for the
Eastern District of North Carolina, No. 5:24-cv-00731-M-RJ

**REPLY IN SUPPORT OF
MOTION FOR STAY AND INJUNCTION PENDING APPEAL**

*Relief Requested by Wednesday, April 23, 2025*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1
ARGUMENT .......................................................................................................2
    I.  This Court Has Appellate Jurisdiction ........................................................2
    II.  Justice Riggs Is Likely to Prevail on the Merits..............................................4
    III.  The Premature Cure Process Will Harm Justice Riggs, the Voters, and Public Confidence in the Electoral Process......................................................7
CONCLUSION....................................................................................................9
CERTIFICATE OF COMPLIANCE....................................................................10

Justice Riggs files this reply in support of her Motion for Stay and Injunction Pending Appeal, ECF No. 5.

**INTRODUCTION**

As soon as Wednesday, April 23, 2025, the State Board will begin notifying voters of a state-law "cure" process that *all parties agree* should *not* go forward now.

Justice Riggs and the State Board submit that it would be premature to begin that process before the federal-law issues have been resolved. As the State Board explains, "an injunction pending appeal is appropriate to halt a process ordered by the state courts that requires state government officials to violate their citizens' federal constitutional and statutory rights." State Board Resp. at 3, ECF No. 19.

Judge Griffin agrees that it would be premature for the State Board to begin the process now, but for a different reason. Judge Griffin is urging the North Carolina Court of Appeals to *expand* the list of targeted voters and to order the State Board "not to contact these voters and not to offer them an opportunity to cure." E.D.N.C. ECF No. 76-1 at 19.

Despite this consensus that the process is not ready to begin, the district court's orders here mean that the State Board is poised to instruct county boards to begin sending out notices to voters. Regardless of whether those notices violate federal law (as Justice Riggs and the State Board believe) or North Carolina law (as Judge Griffin claims), it would be premature to send them out now.

1

This Court should enter a stay and injunction pending appeal that maintains the status quo while this Court considers whether federal law permits retroactive, targeted disenfranchisement. Justice Riggs respectfully submits that it would be inconsistent with this Court's mandate—and her *England* reservation of the federal issues in reliance on that mandate—to permit the state-law process to move forward now.

## ARGUMENT

### I. This Court Has Appellate Jurisdiction

Judge Griffin is wrong to claim that this appeal arises from a temporary restraining order. *See* Griffin Resp. at 3–6, ECF No. 18.

Justice Riggs did not move for a restraining order. She filed an emergency motion for an *injunction*, *see* E.D.N.C. ECF No. 37, and she explained in her supporting brief why the district court should "enter a *preliminary injunction* under Rule 65 and an *injunction* under the All Writs Act," E.D.N.C. ECF No. 40 at 7 (emphasis added). Justice Riggs never mentioned a restraining order. There was nothing "vague about the relief she sought." Griffin Resp. at 5.

The district court understood when entering its April 12 text order that it was ruling on Justice Riggs' "emergency motion for *injunction* and motion for status conference." Text Order (Apr. 12, 2025) (emphasis added). The district court granted "the motion" only in part, *id.*, and it did so without any suggestion that it

would revisit that motion later. Indeed, the district court later clarified that it intends "to resolve *Plaintiff Jefferson Griffin's* pending motions for injunctive relief as soon as practicable." Text Order (Apr. 14, 2025) (emphasis added). That reference to Judge Griffin's "pending motions" is to the three state-court Motions for Temporary Restraining Order and Preliminary Injunction that Judge Griffin filed in December 2024 before the State Board removed the action to this Court. *See* E.D.N.C. ECF Nos. 1-5, 1-9, 1-13.

The district court gave no similar indication that it viewed Justice Riggs' Emergency Motion for Injunction and Motion for Status Conference as unresolved. To the contrary, the district court's April 12 text order was clear that it was "granting" in part (and "refusing" in part) Justice Riggs' motion for an "injunction[]." 28 U.S.C. § 1292(a)(1). Justice Riggs' timely notice of appeal from that text order conferred jurisdiction on this Court and divested the district court of its control over those aspects of the case involved in the appeal. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

Once this Court gained jurisdiction, the district court had no authority to modify its April 12 text order to eliminate this Court's jurisdiction. *See, e.g.*, *Lewis v. Tobacco Workers' Int'l Union*, 577 F.2d 1135, 1139 (4th Cir. 1978) ("a district court loses jurisdiction to amend or vacate its order after the notice of appeal has been filed"); *see also New Horizon of NY LLC v. Jacobs*, 231 F.3d 143, 153 n.20 (4th Cir.

3

2000). It is thus immaterial whether the district court *could have* entered "a non-appealable temporary restraining order." Griffin Resp. at 1. The district court entered a text order granting and refusing an injunction, Justice Riggs appealed, and this Court has jurisdiction under § 1292(a)(1).

**II. Justice Riggs Is Likely to Prevail on the Merits**

Judge Griffin's arguments on the merits fail to grapple with three key features of this case.

First, he ignores this Court's mandate and the *England* reservations that Justice Riggs and the State Board filed. This Court already decided that the federal courts would retain jurisdiction over the federal issues. And the North Carolina courts rejected Judge Griffin's efforts to get them to resolve those federal issues anyway. Accordingly, no one is "invit[ing] this Court to grade the papers of state courts" or to "review[] a state supreme court election decision." Griffin Resp. at 9, 12. The state courts resolved questions of state law, and the case now returns to federal court for resolution of the remaining *federal* issues. The state-law remedy should not go into effect before the federal courts have resolved those federal issues.

Second, Judge Griffin cannot deny that the rules he challenged went into effect long before the November 2024 election. If he had legitimate grievances with those rules, he had a "duty" to bring his complaints "forward for pre-election adjudication." *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983).

4

This duty prevents losing candidates from doing what Judge Griffin did here: "lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action." *Id*. (quoting *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)).

While Judge Griffin attempts to minimize the significance of his election protests, it "is no small thing to overturn the results of an election in a democracy by throwing out ballots that were legally cast consistent with all election laws in effect on the day of the election." *Griffin v. N.C. State Bd. of Elections*, No. 320P24-3, 2025 WL 1090903, at *3 (N.C. Apr. 11, 2025) (Earls, J., concurring in part and dissenting in part). Retroactive, mass disenfranchisement cannot be fairly characterized as a "garden variety" election issue. Griffin Resp. at 11–12.

Justice Riggs is not seeking relief here because of a "failure to divide the ballots into parallel columns separated by distinct black lines," *Hendon*, 710 F.2d at 182, a "voting machine malfunction," *Shannon v. Jacobowitz*, 394 F.3d 90, 96 (2d Cir. 2005), or any other "garden variety election irregularities," *Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978). Justice Riggs requests a stay and injunction pending appeal under the "settled" principle that "the due process clause may be violated" when an "election process reaches the point of 'patent and fundamental unfairness.'" *Hendon*, 710 F.2d at 182 (quoting *Burns*, 570 F.2d at 1077). The facts here "go well beyond the ordinary dispute over the counting and marking of ballots," *Burns*, 570

5

F.2d at 1077, and the federal issues remain even after the North Carolina courts construed the applicable North Carolina law.

Judge Griffin urges this Court to ignore those federal issues on the theory that "only 'massive' disenfranchisement" justifies federal relief. Griffin Resp. at 12 (quoting *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998)). This argument gets the law wrong: "whether the number is thirty or thirty-thousand," the "injury to these voters is real and completely irreparable if nothing is done to enjoin" the federal constitutional violations here. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). But even if Judge Griffin were right that only "massive" disenfranchisement violates the Constitution, that argument would still be no help to him. The *Bennett* court used the word "massive" to describe the "*ex post* disenfranchisement that the Rhode Island Supreme Court's ruling created" in *Burns*. *Bennett*, 140 F.3d at 1226. That ruling affected "123 absentee and shut-in voters." *Burns*, 570 F.2d at 1079. Judge Griffin's challenges here are orders of magnitude larger, affecting at least 1,675 voters. *See* State Board Resp. at 4–5.

Third, Judge Griffin has no explanation for why the Equal Protection Clause would permit his selective targeting of military and overseas voters. He cannot deny that the "Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in [a state] election." *Hadley v. Junior Coll. Dist. of Metro. Kansas City, Mo.*, 397 U.S. 50, 56 (1970). Yet Judge Griffin targeted voters

in, at most, six counties for an unprecedented cure effort conducted nearly half-a-year after the election. While Judge Griffin has never explained why he selected those six counties, he appears to have targeted military and overseas voters who registered in counties that supported Justice Riggs by a wide margin in the November 2024 election. This selection suggests the "worrisome" possibility that Judge Griffin is seeking "to pick and choose among groups of similarly situated voters to dole out special voting [burdens]." *Obama for Am. v. Husted*, 697 F.3d 423, 435 (6th Cir. 2012). That "later arbitrary and disparate treatment" values "one person's vote over that of another" and thus violates the Equal Protection Clause. *Bush v. Gore*, 531 U.S. 98, 104–05 (2000) (per curiam). There is no version of Judge Griffin's state-law arguments that would eliminate this federal equal protection violation.

### III. The Premature Cure Process Will Harm Justice Riggs, the Voters, and Public Confidence in the Electoral Process

The state-law cure process should be stayed because "[c]ount first, and rule upon legality afterwards, is not a recipe for producing election results that have the public acceptance democratic stability requires." *Bush v. Gore*, 531 U.S. 1046, 1047 (2000) (mem.) (Scalia, J., concurring).

Without an injunction pending appeal, the State Board will soon instruct county boards to notify challenged voters that "their vote cast in the 2024 general election for North Carolina Supreme Court Associate Justice will only count if,

7

within thirty days of the date that the mailing referenced above was sent, these voters submit a copied photo ID or exception form." E.D.N.C. ECF No. 61 at 6; *see also id.* at 5. The State Board will send these notices out while Judge Griffin is still seeking to prevent these voters from hearing about his challenges to their votes and from having an opportunity to cure. *See* E.D.N.C. ECF No. 76-1. And because the federal-law issues remain unresolved, the notices will "inform the voter that this litigation is ongoing and the voter's obligations are subject to change." E.D.N.C. ECF No. 61 at 6; *see also id.* at 5. Voters will thus receive notice from their State Board of Elections informing them that their votes may or may not be threatened and instructing them to proceed with a cure process that may or may not be necessary.

These notices will lead to widespread confusion and mistrust. At the very least, they will raise the specter of injury to "fundamental voting rights," which courts routinely deem "irreparable." *League of Women Voters*, 769 F.3d at 247. These notices will also "threaten irreparable harm" to Justice Riggs and the North Carolina voters "by casting a cloud upon" the legitimacy of her election. *Bush*, 531 U.S. at 1047 (Scalia, J., concurring).

The Court should prevent those harms by granting Justice Riggs' motion for a stay and injunction pending appeal. When a state changes the election rules "during an ongoing election"—or, worse, *after* an election—only "an injunction pending

appeal can 'alleviate that ongoing harm.'" *Wise v. Circosta*, 978 F.3d 93, 111 (4th Cir. 2020) (Wilkinson, J., dissenting from order denying injunction pending appeal) (quoting *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1137 (D.C. Cir. 2017)).

## CONCLUSION

The Court should enter a stay and injunction pending appeal that prohibits the parties from taking any action to enforce or effectuate the state-law remedy.

Dated: April 22, 2025  Respectfully submitted,

/s/ Samuel B. Hartzell
Raymond M. Bennett
Samuel B. Hartzell
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Office: 919.755.2158
Fax: 919.755.6068
Email: Ray.Bennett@wbd-us.com
         Sam.Hartzell@wbd-us.com

*Counsel for Intervenor-Appellant*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,043 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

Dated: April 22, 2025 　　　　　　　　　／s/ Samuel B. Hartzell  
　　　　　　　　　　　　　　　　　　　Samuel B. Hartzell

　　　　　　　　　　　　　　　　　　　*Counsel for Intervenor-Appellant*