No. 25-1397 (L); 25-1398

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JEFFERSON GRIFFIN,

*Plaintiff-Appellee,*

*v.*

NORTH CAROLINA STATE BOARD OF ELECTIONS,

*Defendant-Appellant,*

and

ALLISON RIGGS, NORTH CAROLINA ALLIANCE FOR RETIRED
AMERICANS, VOTEVETS ACTION FUND, TANYA WEBSTER-
DURHAM, SARAH SMITH, AND JUANITA ANDERSON,

*Intervenor-Appellants.*

On Appeal from the United States District Court
for the Eastern District of North Carolina

## VOTEVETS ACTION FUND, NORTH CAROLINA ALLIANCE
## FOR RETIRED AMERICANS, TANYA WEBSTER-DURHAM,
## SARAH SMITH, AND JUANITA ANDERSON'S EMERGENCY
## REPLY IN SUPPORT OF MOTION FOR INJUNCTION
## PENDING APPEAL

NARENDRA K. GHOSH
PATTERSON HARKAVY LLP
100 EUROPA DRIVE, STE 420
CHAPEL HILL, NC 27217
(919) 942-5200

LALITHA D. MADDURI
CHRISTOPHER D. DODGE
TINA MENG MORRISON
JAMES J. PINCHAK
JULIE ZUCKERBROD
ELIAS LAW GROUP LLP
250 MASSACHUSETTS AVE NW., STE 400
WASHINGTON, DC 20001
(202) 968-4490

## TABLE OF CONTENTS

INTRODUCTION ............................................................................2

ARGUMENT ...................................................................................3

I.     This Court has jurisdiction. ...............................................3

II.     Griffin ignores the irreparable harm identified by movants. .........4

III.     Voter Appellants are likely to prevail on the merits. ......................7

      A.     Griffin ignores "settled" substantive due process law............7

      B.     Griffin tries to sweep away *Bush v. Gore*, which is "binding" here................................................................11

      C.     No state interest justifies disenfranchising voters months after an election....................................................12

IV.     The balance of equities favor an injunction. ..................................13

CONCLUSION .........................................................14

## INTRODUCTION

Griffin grasps for a reason not to stay a burdensome, confusing, and discriminatory cure process until outstanding federal issues that are likely to eliminate the need for cure at all—purposefully left unaddressed by state courts—can be resolved. But he finds none. On the merits, Griffin says substantive due process principles have no pedigree here. Wrong—they are "settled" law. *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983). He claims movants seek to supplant state court rulings on state law issues. Wrong again—they seek orderly review of reserved *federal* issues. *See* ECF.35.[1] He says *Bush v. Gore* has no precedential value. Wrong thrice—this Court has treated *Bush* as "binding." *Wise v. Circosta*, 978 F.3d 93, 100 n.7 (4th Cir. 2020) (en banc). Finally, as the Board makes clear, the state has no interest in imposing a new ID requirement on voters *after* they vote, particularly when Griffin cannot identify even **one** ineligible voter after months of searching.

His equitable arguments fail too. This Court has jurisdiction—the orders below "refuse[d]" clear requests for "injunctions." 28 U.S.C

---

[1] Unless otherwise indicated, citations to "ECF" are filings in the district court, No. 24-cv-00731, and "Doc" are filings in this appeal, No. 25-1397.

§1292(a)(1). The irreparable harm is stark. Griffin has *already* returned to state court crying for more relief, adding more confusion as to who may need to cure. The equities and common sense are clearcut: the cloud of legal doubt over the cure process should be addressed before foisting it on voters. An injunction should be granted.

## ARGUMENT

### I.    This Court has jurisdiction.

The April 12 order denied a request "for an injunction maintaining the status quo by prohibiting the parties from taking any action to enforce or effectuate" a cure process. ECF.37 at 1. The status quo is now *not* being maintained; the Board will implement cure procedures "until directed otherwise by court order." Doc.19 at 11. In the district court's own words, its order "decline[d] to interfere … with the initiation of [this] remedial process." ECF.60 at 2.

Such an order is appealable because it "refus[es]" an "injunction" of the cure process. 28 U.S.C. §1292(a)(1); *Harding v. Reverse Mortg. Sols.*, 2022 WL 10713212, at *1 (4th Cir. May 2, 2022) (denying motion to dismiss where "order on appeal denied [appellant's] request for injunctive relief" and concluding the court "ha[d] jurisdiction under [§1292(a)(1)]").

3

Further still, the state courts' remedial orders are effectively now the district court's own. *See* 28 U.S.C. §1450. The district court's orders "refus[ed] to dissolve or modify [that] injunction[]" to permit orderly review of federal issues, *id.* §1292(a)(1), supplying an additional jurisdictional ground.

Griffin pretends the movants sought only temporary restraining orders. Doc.18 at 9-12. That is false. *See* ECF.47, 48 (requesting preliminary injunction); ECF.36, No. 5:24-cv-699 (E.D.N.C.) (same); ECF.12, No. 5:25-cv-193 (E.D.N.C.) (same). The appealed orders denied these requests. Contrary to Griffin's insinuation, Doc.18 at 9, the subsequent briefing order was set "to facilitate prompt resolution of this matter," April 12 Text Order, and not to brief *preliminary* injunctions.

## II. Griffin ignores the irreparable harm identified by movants.

Griffin ignores the irreparable harm described by Voter Appellants, retreating to the specious argument that "the opportunity to cure deficient ballots isn't a burden at all." Doc.18 at 13. That passing claim ignores that any cure process that commences before litigation is settled will inevitably stifle voter participation, confuse voters, and "skew" the cure's results. Doc.8-1 at 21. Many voters will not jump through

burdensome hoops while litigation is ongoing and before it is clear that curing is even necessary. *Id.* And proceeding with a tainted process constitutes irreparable harm even where the harmed party is "deprived of nothing until the completion of the proceedings." *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982). Any new vote totals stemming from this half-baked process will not be the product of a full and fair effort to enfranchise as many voters as possible. Should the curing window close before federal litigation ends, the ship for potentially hundreds of voters will have already sailed. *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("discriminatory voting procedures" and "restrictions on fundamental voting rights" constitute "irreparable injury") ("*LWV*").

Griffin also says nothing about the Supreme Court's decision in *Bush* to stay a potentially unconstitutional recount procedure before resolving its merits. That ruling is irreconcilable with Griffin's view that a "*process*" cannot constitute irreparable harm. Doc.18 at 13 (emphasis in original). "Count first, and rule upon legality afterwards, is not a recipe for producing election results that have the public acceptance democratic

stability requires." *Bush v. Gore*, 531 U.S. 1046, 1047 (2000) (Scalia, J., concurring).

Griffin's next tack is a failed "gotcha" argument noting certain movants have previously asked courts to order ballot-curing processes. Doc.18 at 13-14 (citing cases). Unsurprisingly, none of those cases involved retroactive implementation of *new* rules that *disenfranchise* voters unless they "cure" their previously valid ballots; each concerned an effort to *enfranchise* voters whose ballots were discounted due to mistaken non-compliance with an *existing* rule. To Voter Appellants' knowledge, no court has ever ordered a "cure" that (1) violated equal protection or (2) was carried out in furtherance of disenfranchising voters whose only sin was following the rules on election day.

The injury to VoteVets is not self-imposed as Griffin suggests, Doc.18 at 9—VoteVets has explained why it will become necessary to help overseas servicemembers navigate the ballot-curing process even with the Board's notices, Doc.8-1 at 23-24. Should the cure go forward before found necessary, the Board's notices will "inform the voter[s] that this litigation is ongoing and the voter's obligations are *subject to change*." ECF.61 at 5. This in turn will "likely create huge confusion among

VoteVets constituents" by harming "[m]ilitary voters" who "already vote at low rates compared to their civilian counterparts." ECF.58 ¶¶8, 10. Griffin glibly labels these individuals "noncompliant voters." Doc.18 at 14. But what makes spending these resources necessary is that these voters *were* compliant on election day. Absent relief, VoteVets will expend unrecoverable resources to help protect their ballots. Griffin's suggestion, *id.*, that losing these resources is not irreparable harm ignores that such loss is irreparable where (as here) recovery is "unavailable." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*915 F.3d 197, 218 (4th Cir. 2019).

## III.  Voter Appellants are likely to prevail on the merits.

### A.  Griffin ignores "settled" substantive due process law.

Longstanding and well-established substantive due process principles resolve this case. *See* Doc. 8-1 at 9-14 (citing *Griffin v. Burns*, 570 F.2d 1065, 1067, 1074 (1st Cir. 1978) and other cases). Griffin nonetheless insists movants rely upon an unrecognized branch of substantive due process. Doc.18 at 15-17. That is false. The principles in *Griffin* are "settled" law in this Circuit, *Hendon*, 710 F.2d at 182, and others, Doc.8-1 at 11 (collecting cases). Griffin has no answer to *Hendon*,

so he ignores it. But that does not change that such settled law "controls" absent clear Supreme Court abrogation Griffin does not even try to point to. *United States v. Hill*, 776 F.3d 243, 247-49 (4th Cir. 2015).[2]

Nor, as Griffin insists, is this a case where federal courts are intruding upon state prerogatives to "to grade the papers of state courts." Doc.18 at 15. That claim ignores critical aspects of this case's procedural history. Under this Court's *Pullman* order, the North Carolina courts *purposefully did not reach these federal questions*. Doc.132 (No. 25-1018); *see also Meredith v. Talbot Cnty., Md.*, 828 F.2d 228, 232 (4th Cir. 1987) ("The usual rule is to retain jurisdiction in *Pullman* situations."). There is no second guessing here—movants are now presenting only their federal arguments in the first instance, as contemplated by this Court. To suggest movants are now barred from raising these arguments erases this Court's *Pullman* order and undermines the Board's lawful removal

---

[2] Griffin's suggestion that applying *Griffin* would require a new election is another distraction. Doc.18 at 17. Griffin has never sought such a remedy. Movants raise federal arguments to foreclose Griffin's challenges *as presented*. Further, the remedy in *Griffin* was tailored to the facts of that case concerning a primary in a single city council ward, 570 F.2d at 1066—not a statewide election in which over 5.5 million ballots were cast.

under 28 U.S.C §1443.[3]

Unable to avoid the application of substantive due process, Griffin suggests this case reflects only a "garden variety" election issue unworthy of federal attention. Doc.18 at 17-18. That claim should shock the conscience. Griffin seeks nothing less than to reverse the will of the voters, imposing a cure process upon overseas and military voters—*not one of whom* he has shown to be ineligible to vote—based on an interpretation of state law made five months *after the election*. It is patently "unreasonable[]" to "expect[] a voter to have questioned" the rules provided to them based on future rulings that divided North Carolina's appellate courts. *Griffin*, 570 F.2d at 1076. Unsurprisingly, none of Griffin's cases about "garden variety" disputes reflect facts like those here. More fundamentally, as former Governor McCrory and others have stated, Griffin's efforts are "a threat to the public's faith in our judicial system" and demand to that "tens of thousands of voters [] lose

---

[3] Movants are also *not* asking this Court to supplant state courts as "'the final arbiter[s]' of their own State's laws." Doc.18 at 18 (quoting *Bennett v. Yoshina*, 140 F.3d 1218, 1225 (9th Cir. 1998)). The instant motions raise questions of *federal* law left unaddressed by state courts in deference to this Court's *Pullman* order.

their voice after they voted."[4]

Finally, Griffin claims that, while he may well seek to disenfranchise voters, such disenfranchisement is not "massive" enough to warrant relief. Doc.18 at 18-19. That theory ignores both that Griffin is presently trying to *expand* the universe of challenged voters and that his earlier request for far broader disenfranchisement has been winnowed solely on separate state grounds. *See* Pet. at 3-4, *Griffin v. N.C. State Bd. of Elections*, No. COA25-181 (N.C. Ct. App. Apr. 16, 2025). More critically, none of Griffin's authority imposes a "massiveness" requirement on substantive due process claims. The Ninth Circuit in *Bennett* merely observed that *Griffin* concerned a scenario where ten percent of voters would have been disenfranchised—neither case *conditioned* a claim on that fact. *See Bennett*, 140 F.3d at 1226-27. *Griffin* instead stressed that the "right to vote remains, at bottom, a federally protected right." 570 F.2d at 1077. Thus, federal courts must stand ready where election processes "reach[] the point of patent and fundamental unfairness." *Id.* That is precisely what Griffin seeks by pursuing a

---

[4] *See* https://www.commoncause.org/north-carolina/wp-content/uploads/2025/03/NC-Legal-Community-Open-Letter-to-Griffin-3.18.25.pdf.

discriminatory cure process that demands targeted voters abide judicial rulings made in April 2025 for ballots they cast in November 2024.

## B. Griffin tries to sweep away *Bush v. Gore*, which is "binding" here.

Griffin's position that *Bush* does not "appl[y] to equal-protection challenges to state law" contradicts every court to have cited it the last quarter-century. Doc.18 at 23; *e.g.*, *Mi Familia Vota v. Fontes*, 129 F.4th 691, 730 (9th Cir. 2025) (discussing *Bush*'s applicability in election cases); *Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, 827 F.3d 333, 340 (4th Cir. 2016) ("*RWCA*") (citing *Bush*). Indeed, Griffin's citation to this Court's discussion of *Bush*'s precedential value in *Wise*, 978 F.3d 100, n.7, ignores that this Court expressly "treat[ed]" *Bush* "as binding," *id.* Griffin is also wrong that *Bush*'s principles only apply to national elections. Doc.18 at 23-24. *Bush*'s "one person, one vote principle, applies not just to the federal government but also to state and local governments." *RWCA*, 827 F.3d at 340.

Nor is *Bush* "cabined" only to "recount[s]" under the authority of a "single state judicial officer." Doc.18 at 24. The point of *Bush*'s reference to a "single state judicial officer" was to contrast it from situations in which disparate treatment was instead spread across multiple localities

11

and independent decisionmakers. 531 U.S. at 109. The "single state judicial officer" in *Bush*, like here, *was* the state's highest court, which had the "power to assure uniformity" but instead "ratified [] uneven treatment." *Id.* at 107, 109. For that reason, Griffin is wrong that Voter Appellants' reading of *Bush* would require every "candidate contesting an election to file in every county across the State." Doc.18 at 25. When a single state court, as here, decides *after* an election that the rules in place did not conform to state statutes, the court cannot apply its "remedial process[]" "uneven[ly]" to some counties prospectively, and others retrospectively. 531 U.S. at 107, 108.

### C. No state interest justifies disenfranchising voters months after an election.

Griffin claims the cure is a "usual" "inconvenience" necessary to prevent counting "unlawful" votes. Doc.18 at 21-22. But there is nothing "usual" about requiring certain targeted voters to "remedy" ballots for their alleged failure to comply with an election rule that *did not exist* at the time those ballots were cast. Springing such a requirement on voters half a year *after* they cast ballots in accordance with existing rules severely burdens those voters' fundamental right to vote. *Cf. Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 597 (6th Cir. 2012). Tellingly,

12

Griffin cannot point to any example of a similar cure requirement, instead identifying cases permitting voters to cure ballots that did not comply with *pre-existing rules*. *E.g.*, *Democratic Party of Va. v. Brink*, 599 F. Supp. 3d 346, 363 (E.D. Va. 2022).

Griffin also identifies no valid state interest that justifies retroactively imposing new rules on qualified voters. He relies only on cases where courts have recognized a state's interest in ensuring *prospectively* that only eligible voters' ballots are counted. *E.g.*, *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008). Despite having months to look, Griffin has presented no evidence that *any* voter targeted by his UOCAVA ID Challenge is unqualified to vote. He thus cannot identify a state interest in tossing out their ballots.

## IV. The balance of equities favor an injunction.

The public interest here rests with preserving ballots cast by voters in accordance with the rules they were given, and avoiding an unnecessary cure process that confuses voters and wastes resources. *LWV*, 769 F.3d at 247-48. Those interests are particularly acute since Griffin has returned to state court to expand the scope of the cure, leaving its parameters hazy. It is hard to fathom what public interest is served

by haranguing voters, like those subject to Griffin's UOCAVA ID Challenge, where no doubt as to their eligibility has even been suggested. Griffin's concern about the 'dilution' of his supporters' votes assumes his correctness on the merits and ignores that Griffin has overlooked such "dilution" in most counties; the public has no interest in such gamesmanship. Instead, preserving the constitutional right to vote of *all* rule-abiding voters "surely serves the public interest." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002).

Finally, Griffin's plea that the equities weigh against intrusion into a state election contest is nonsensical where, as here, this Court has already commanded that federal questions have their day in federal court. Doc.132 (No. 25-1018). Instead, the equities (and common sense) favor orderly resolution of outstanding legal issues before imposing the burden, confusion, and cost of a cure on voters and the public.

## CONCLUSION

Voter Appellants' motion should be granted.


Dated: April 22, 2025                          Respectfully submitted,

                                               /s/ *Lalitha D. Madduri*
                                               Lalitha D. Madduri


14

Christopher D. Dodge
Tina Meng Morrison
James J. Pinchak
Julie Zuckerbrod
ELIAS LAW GROUP LLP
250 Massachusetts Ave, N.W.
Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
cdodge@elias.law
tmengmorrison@elias.law
jpinchak@elias.law
jzuckerbrod@elias.law

Narendra K. Ghosh
N.C. Bar No. 37649
PATTERSON HARKAVY LLP
100 Europa Drive, Suite 420
Chapel Hill, NC 27217
Telephone: (919) 942-5200
nghosh@pathlaw.com

*Counsel for Intervenor-Appellants VoteVets Action Fund, the North Carolina Alliance for Retired Americans, Tanya Webster-Durham, Sarah Smith, and Juanita Anderson*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,579 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook.

Dated: April 22, 2025                    /s/ *Lalitha D. Madduri*
                                         Lalitha D. Madduri

                                         *Counsel for Intervenor-*
                                         *Appellants VoteVets Action*
                                         *Fund, the North Carolina*
                                         *Alliance for Retired Americans,*
                                         *Tanya Webster-Durham, Sarah*
                                         *Smith, and Juanita Anderson*

## CERTIFICATE OF SERVICE

On this 22nd day of April, 2025, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ *Lalitha D. Madduri*
Lalitha D. Madduri

*Counsel for Intervenor-Appellants VoteVets Action Fund, the North Carolina Alliance for Retired Americans, Tanya Webster-Durham, Sarah Smith, and Juanita Anderson*

17